**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:17-cv-23788-GAYLES/OTAZO-REYES**


**CENTRAL TRANSPORT, LLC,**
**an Indiana limited liability company,**

                                                    **Plaintiff,**

**v.**

**GLOBAL AEROLEASING, LLC,**
**a Florida limited liability company,**
**TEXON FREIGHT SOLUTIONS, LLC,**
**a Florida limited liability company,**
**MEGATRANS LOGISTICS, INC.,**
**a Florida corporation, and**
**MARANA AEROSPACE SOLUTIONS, INC.,**
**an Oregon corporation,**

                                                    **Defendants.**
**_____/**


<u>**ORDER**</u>

        **THIS CAUSE** comes before the Court on Defendant GLOBAL AEROLEASING,

LLC'S, Motion to Dismiss Plaintiff's Complaint (the "Motion") [ECF No. 28].  The Court has

carefully reviewed the Motion, the record, and the applicable law. For the reasons discussed be-

low, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

**I.        BACKGROUND[1]**

        Plaintiff, Central Transport, LLC, seeks a declaratory judgment to establish the extent of

its liability to Defendants Global Aeroleasing, LLC ("Global"), Texon Freight Solutions, LLC

("Texon"), Megatrans Logistics, Inc., and Marana Aerospace Solutions, Inc. ("MAS").  The lia-

---

[1]    The Court must accept Plaintiff's allegations, set forth below, as true for purposes of this motion to
    dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

bility in question stems from an incident that caused damage to a shipment of freight owned by Global.

The Complaint alleges that on or about June 5, 2017, Texon, acting as a freight broker, contacted R.R. Donnelley d/b/a/ DLS Worldwide ("RRDL") to request transportation of the freight from MAS' facility in Marana, Arizona, to Medley, Florida. [ECF No. 1 ¶ 10]. RRDL, who already had a transportation agreement in place with Plaintiff, then engaged Plaintiff to move the freight in accordance with that agreement (the "Transportation Contract"). [*Id.* at ¶ 12]. Pursuant to the terms of the Transportation Contract, RRDL issued a bill of lading to transport the freight. [*Id.* at ¶ 14]. The bill of lading identified MAS as the shipper and Megatrans as the consignee of the freight. [*Id.*]. It stated that the move was subject to the Transportation Contract between RRDL and Plaintiff, as well as Plaintiff's tariff, CT 100. [*Id.* at ¶¶ 15, 28]. The bill of lading was signed by Plaintiff and MAS. [*Id.* at ¶ 14].

On June 5, 2017, Plaintiff's tractor-trailer arrived at MAS' facility to transport the freight, and on or about June 12, 2017, Plaintiff delivered the freight to Megatrans in Medley, Florida. [*Id.* at ¶¶ 13, 18]. Shortly thereafter, Megatrans, Texon, and/or Global claimed the freight was damaged; and on August 8, 2017, Texon filed a claim with Plaintiff seeking $1,000,000 for alleged damage to the freight. [*Id.* at ¶¶ 19-20]. Allegedly, Global has also threatened to file suit against Plaintiff for this same claim. [*Id.* at ¶ 20].

In Count 1 of the Complaint, Plaintiff seeks a declaratory decree limiting its liability to $3,140. [*Id.* at ¶ 25]. Plaintiff argues that the Transportation Contract provides that Plaintiff's liability for any freight loss or damage claims is limited to $1.00 per pound and the bill of lading provides that the freight weighed 3,140 pounds. [*Id.* at ¶¶ 16, 24]. Plaintiff further argues that

the bill of lading states that the transportation of the freight is subject to the terms and conditions of the Transportation Contract. [*Id.* at ¶ 22].

In Count II of the Complaint, Plaintiff alternatively seeks a declaratory decree limiting its liability to $314. [*Id.* at ¶ 29]. Plaintiff argues that its tariff, CT 100, is incorporated in the bill of lading and limits its liability for any freight loss or damage claims to $.10 per pound. [*Id.* at ¶ 28].

## II.  DISCUSSION

### A.  Plaintiff Has Properly Alleged Subject-Matter Jurisdiction

Defendant Global argues that one reason the Complaint should be dismissed is that Plaintiff has failed to properly allege that the Court has subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Butler v. Morgan*, 562 F. App'x 832, 834 (11th Cir. 2014).

Here, Plaintiff alleges diversity jurisdiction based upon 28 U.S.C. § 1332(a). [ECF No. 1 ¶ 8]. To properly invoke the existence of diversity jurisdiction, a plaintiff must allege that there is: (1) complete diversity of citizenship between all plaintiffs and all defendants; and (2) greater than $75,000.00 in controversy. 28 U.S.C. § 1332(a). Global argues that Plaintiff has failed to properly allege diversity jurisdiction because the amount in controversy does not exceed $75,000. [ECF No. 28, at 4-5]. To this point, Global contends that Plaintiff is requesting a declaratory judgment that limits Plaintiff's liability to $3,140, or alternatively, $314, and thus the

amount in controversy is insufficient to establish diversity jurisdiction. [*Id.*]. Plaintiff, on the other hand, argues that it is asking the Court to limit its liability in connection with a claim of $1,000,000, and that for determining the amount in controversy, the Court must look to the value of the claim, and not the limitation of liability sought. [ECF No. 29, at 2].

"For amount in controversy purposes, the value of . . . declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (quoting *Ericsson GE Mobile Comms., Inc. v. Motorola Comms. & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997)). "Stated another way, the value of declaratory relief is 'the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted.'" *S. Fla. Wellness, Inc. v. Allstate Ins. Co.,* 745 F.3d 1312, 1316 (11th Cir. 2014) (quoting *Morrison*, 228 F.3d at 1268) (alteration in original).

In *First Mercury Insurance Co. v. Excellent Computing Distributors, Inc.*, the plaintiff insurance company sought a declaration absolving it of a duty to indemnify the defendant in a negligence suit. 648 F. App'x 861, 861 (11th Cir. 2016) (per curiam). In challenging the court's jurisdiction, the defendant argued that the court did not have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the plaintiff believed it had no obligation under the insurance policy, and thus the "good-faith valuation of its declaratory judgment action must be $0." *Id.* at 864. "[E]asily" rejecting this argument, the court explained that if the plaintiff "loses its declaratory judgment action, it may face $1,000,000 or more in coverage liability." *Id.* at 865. The court thus concluded that the "'value of the object of [the] litigation'—a judgment declaring [plaintiff] free from any indemnification obligation under its policy—far exceeds $75,000." *Id.*

The value of the object of the present dispute likewise exceeds $75,000. Though Plaintiff does seek a declaration limiting its liability to $3,140, or alternatively, $314, like the plaintiff in

*First Mercury*, Plaintiff may face $1,000,000 in liability if it loses its declaratory judgment action. The benefit that would flow to Plaintiff if it wins in its declaratory judgment action is thus estimated to be $996,860 or alternatively, $999,686. In either case, the amount exceeds the $75,000 required for diversity jurisdiction.

Finally, to the extent that Defendant Global argues that the jurisdictional amount is not met because the $1,000,000 claim "is not appended to the complaint or raised by any party hereto in support of or as part of a claim for relief," the Court is unconvinced. [ECF No. 28, at 4]. Ultimately, "[t]he amount in controversy is not proof of the amount the plaintiff will recover. Rather it is an estimate of the amount that will be put at issue in the course of litigation." *S. Fla. Wellness*, 745 F.3d at 1315 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). Absolute certainty regarding the amount is neither obtainable nor required. *Id.* at 1316. Here, Plaintiff alleges that Defendant Texon has filed a claim with Plaintiff seeking $1,000,000 for alleged damage to the freight. [ECF No. 1 ¶ 20]. Defendant Global recognizes this claim and while arguing it was not appended to the Complaint, does not argue as to the amount, nor argues a lack of intention to file a subsequent claim. Thus, the Court is satisfied that the referenced claim sufficiently establishes diversity jurisdiction; complete diversity exists between Plaintiff and Defendants, and the Complaint alleges that the amount in controversy exceeds $75,000 in a way that is neither "too speculative [nor] immeasurable." *See S. Fla. Wellness*, 745 F.3d at 1315.

### B. Joinder of RRDL Is Not Required

Global also argues that the Complaint should be dismissed, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join an indispensable party, RRDL. Dismissal under Rule 12(b)(7) is a two-part inquiry. First, the party moving to dismiss an action for failure to join an indispensable party must establish that the absent party is a "required" party as

defined by Rule 19(a). *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1334 (11th Cir. 2011). "Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014). Instead, an absent party is required where (1) the court cannot accord complete relief among the existing parties; (2) prejudice would result to the absent party's ability to protect itself in the instant action; or (3) the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations. *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682-83 (S.D. Fla. 2014); *see also City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999). Second, if the court determines that the absent party is required, it "must order that party joined if its joinder is feasible." *Raimbeault*, 302 F.R.D. at 682; *see also* Fed. R. Civ. P. 19(a)(2). Conversely, if the court determines the absent party is *not* required under Rule 19(a), the lawsuit continues. *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999).

Despite Global's assertions, RRDL is not a required party under Rule 19(a). Though Plaintiff does seek to enforce the Transportation Contract to which RRDL is a party, and ordinarily a party to a contract should be joined under Rule 19(a), court precedent establishes that joinder of RRDL is not necessary. In *Great Northern Railway Co. v. O'Connor*, the Supreme Court held that a first-tier carrier can enter into an enforceable contract with a second-tier carrier to put a ceiling on the value of a freight owner's goods, even if the freight owner had never agreed to the lower value. 232 U.S. 508, 514-15 (1914). The Court reasoned that the second-tier carrier "had the right to assume that the [first-tier carrier] could agree upon the terms of the shipment." *Id.* Thus, if the owner's goods were damaged in transit, the owner could recover from the second-tier carrier only the amount negotiated by the first- and second-tier carriers. In *Norfolk*

*Southern Railway Co. v. Kirby,* the Court expanded this principle and held that the owner's po-

tential recovery against further downstream carriers could likewise be contractually limited by a

first-tier carrier or intermediary. 543 U.S. 14, 34 (2004). The Court explained that like in *Great*

*Northern*, such a decision produces an equitable result because the owner of the freight retains

the option to sue the first-tier carrier or intermediary for any loss that exceeds the limitation to

which they agreed. *Id.* at 35. The intermediary in *Kirby* was not joined into the dispute, and in

fact, the Court pointed out that the freight owner was suing the intermediary in another court. *Id.*

As was the case in *Kirby*, courts have resolved the extent of a carriers' liability to a ship-

per under a contract or bill of lading to which an intermediary was a party without joinder of the

intermediary. *See G & P Trucking Co., Inc. v. Zurich Am. Ins. Co.*, No. 3:14-cv-501, 2015 WL

3842842 (D.S.C. June 19, 2015); *Nipponkoa Ins. Co., Ltd. v. Atlas Van Lines, Inc.*, 687 F.3d 780

(7th Cir. 2012). This is, of course, because refusing to join an intermediary, such as RRDL, in an

action like this one, does not implicate the three ways in which this circuit deems a party to be a

required party under Rule 19(a).

First, the Court can accord complete relief among the existing parties. Here, Plaintiff

seeks declaration only against Defendants. Though the Court's decision may be a catalyst for

subsequent litigation that may include RRDL, Rule 19(a) "does not concern any subsequent re-

lief via contribution or indemnification for which the absent party might later be responsible."

*DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) (quoting *Bedel v. Thompson*, 103 F.R.D. 78,

80 (S.D. Ohio 1984)).

Second, prejudice would not result to RRDL's ability to protect itself in the instant ac-

tion. Though Global argues that RRDL's "rights and obligations under the contract and bill of

lading will be determined and impacted by any decision rendered," once again, Plaintiff seeks to

declare the extent of its obligations only as to Defendants. Because RRDL's rights are not being addressed, the mere possibility that the outcome here will influence a future litigation is not sufficient to make RRDL a required party. Rule 19 requires "a legally protected interest, and not merely a financial interest or interest of convenience." *Axiom Worldwide, Inc. v. Becerra*, No. 08-1918, 2009 WL 1347398, at *4 (M.D. Fla. May 13, 2009) (quoting *Kenko Int'l Inc. v. Asolo S.R.L.*, 838 F. Supp. 503, 506 (D. Colo. 1993)). Additionally, when joinder would not destroy diversity jurisdiction, as is the case here, "[c]ourts frequently consider the refusal of an absent party to seek intervention as a factor mitigating against the necessity of joining [it] pursuant to Rule 19(a)." *Burger King Corp. v. Am. Nat'l Bank and Trust Co.*, 119 F.R.D. 672, 678 (N.D. Ill. 1988) (citing 3A *Moore's Federal Practice* ¶ 19.07[2.1] at 19–104—19–106). "They reason that an absent person's decision to forego intervention indicates that he does not deem his own interests substantially threatened by the litigation; and if he does not, the court should not, absent special circumstances, second-guess this decision." *Id.*

Finally, RRDL's absence would not create a substantial risk that the existing parties would incur inconsistent or duplicative obligations. "Inconsistent obligations arise only when a party cannot simultaneously comply with the orders of different courts." *Compania Chilena De Navegacion Interoceanica, S.A. v. D.H.C. Trucking, Inc.,* No. 15-22494-CIV, 2016 WL 1722425, at *4 (S.D. Fla. Apr. 29, 2016) (quoting *Sch. Dist. v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 282 (6th Cir. 2009) (en banc)). "[They] are not … the same as inconsistent adjudications or results, [which] occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1040 (11th Cir. 2014) (quoting *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (per curiam)). Even if this Court were to limit Plaintiff's lia-

bility in this litigation, another court would be free to refuse to limit RRDL's liability in a subsequent litigation based on the same contract. Such a scenario would not create inconsistent obligations for either Plaintiff or RRDL. Each would be under a single obligation. In other words, not joining RRDL is unlikely to create a situation where a party cannot simultaneously comply with the orders of different courts.

Ultimately, joinder of RRDL may, in fact, be of practical convenience. The Court notes a number of cases in which similar disputes were adjudicated with all parties present. *See, e.g., McLaughlin Transp. Sys., Inc. v. Rubinstein*, 390 F. Supp. 2d 50 (D. Mass. 2005). However, the fact stands that Global has not met its burden of showing that RRDL is a required party as defined under Rule 19(a). Though RRDL may be an important source of evidence, and the dispute may be more completely resolved if RRDL was joined, Rule 19(a) ordinarily does not compel joinder for these reasons. *See Baltica-Skandinavia Ins. Co., Ltd. v. Booth, Potter, Seal & Co.*, No. 86-1967, 1986 WL 10114, at *2 (E.D. Pa. Sept. 15, 1986). Thus, while RRDL may seek intervention through other means, the Court denies the motion to dismiss on these grounds.

### C. The Complaint Is an Improper Shotgun Pleading

Lastly, Global contends that Plaintiff's Complaint should be dismissed because it is a "shotgun pleading," in violation of Rule 8 of the Federal Rules of Civil Procedure. A district court has the *sua sponte* obligation to identify and dismiss a "shotgun" complaint. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014). The Eleventh Circuit has outlined four types of these pleadings, all of which require amendment because they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). One way, "[t]he most common type—by a long shot—is a complaint containing multiple counts

9

where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* That is precisely what Plaintiff does here. Thus, notwithstanding the discussion above, the Complaint must be dismissed as a shotgun pleading.

III.    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No. 28] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's Motion to Dismiss the Complaint for lack of subject-matter jurisdiction is **DENIED**;

2. Defendant's Motion to Dismiss the Complaint for failure to join a required party is **DENIED**; and

3. Defendant's Motion to Dismiss the Complaint as an improper shotgun pleading is **GRANTED**. If Plaintiff wishes to file an Amended Complaint, it shall do so within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of September, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE