UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:17-cv-23788-GAYLES/OTAZO-REYES

**CENTRAL TRANSPORT, LLC,**

          Plaintiff,

v.

**GLOBAL AEROLEASING, LLC,**
**TEXON FREIGHT SOLUTIONS, LLC,**
**MEGATRANS LOGISTICS, INC., and**
**MARANA AEROSPACE SOLUTIONS, INC.,**

          Defendants.

_____/

**<u>ORDER</u>**

   **THIS CAUSE** comes before the Court on Plaintiff Central Transport, LLC's Motion for Partial Summary Judgment (the "Motion") [ECF No. 89]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is granted.

**I.  BACKGROUND**[1]

   This case involves a set of used commercial airplane landing gears (the "landing gear") that Plaintiff transported from Arizona to Florida in 2017 for $1,015.75. Plaintiff now seeks a declaratory judgment limiting its liability to $3,140.00 as to Defendants Global Aeroleasing, LLC, ("Global") and Megatrans Logistics, Inc., ("Megatrans") for alleged damage to the landing gear.

---

[1] The facts relevant to the Motion are undisputed unless otherwise stated and are taken from the following statements of facts and their accompanying exhibits: (1) Plaintiff's Rule 56.1 Statement of Material Facts in Support of its Motion for Partial Summary Judgment [ECF No. 89 at 3–10]; (2) Global's Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def.'s SMF") [ECF No. 95]; and (3) Plaintiff's Reply to Global's Statement of Material Facts [ECF No. 100]. The Court notes that because Global failed to use numbered paragraphs in its statement of material facts in opposition to the Motion, as required by Local Rule 56.1(a), the Court refers to facts within Global's statement by page number rather than paragraph number.

### A. The Parties

Global (the shipper) owns the landing gear. To arrange for and effectuate the transportation of the landing gear, Global hired an intermediary, Megatrans (the first broker in the chain). Megatrans then engaged Texon Freight Solutions, LLC, ("Texon") (the second broker). Texon engaged Sterling Transportation Inc., (the third broker), who engaged R.R. Donnelley d/b/a/ DLS Worldwide ("RRDL") (the final broker). RRDL engaged Plaintiff (the carrier) to transport the landing gear from Marana, Arizona, to Medley, Florida. RRDL and Plaintiff had in effect, since 2012, an agreement that covered transportation services provided by Plaintiff (the "Contract"). [ECF No. 90].

### B. The Shipping Documents

The Contract contains a limitation of liability provision (the "liability limitation") which provides, in pertinent part:

> (b) The measure of damages for loss or damage shall be the replacement value of the goods. The following limits of liability shall apply to shipments transported under [the Contract] *unless otherwise provided in a special services addendum for a given shipment*: . . .
>
> iii. For claim purposes, *all used machinery or equipment* . . . will be considered released to a *value not exceeding one dollar per pound*.
> . . .

*Id.* at 8–9 (emphasis added). It is undisputed that the landing gear constitutes used equipment under the Contract and that no special services addendum was issued for its shipment. The landing gear weighs 3,140 pounds. Thus, under the liability limitation, damages would be capped at $3,140.00.

Prior to Plaintiff picking up the landing gear in Arizona, RRDL prepared a bill of lading,[2] which Megatrans sent to Global. The bill of lading states that it is "subject to the agreement

---

[2] A bill of lading is a legal document that details the type, quantity, and destination of shipped goods. It serves as a contract between a shipper and a carrier, a document of title, and a receipt for freight services.

between [Plaintiff] and [RRDL] in effect on the date of shipment" and that a liability limitation for loss or damage to the shipment may apply. [ECF No. 89, Ex. E]. The Contract was in effect when Plaintiff picked up the landing gear in Arizona on June 5, 2017.

### C. The Transportation of the Landing Gear

The landing gear was housed in a wooden crate when Plaintiff picked it up. At some point during transit, Plaintiff removed the landing gear from its original wooden housing and repackaged it in cardboard wrapping. Plaintiff then transported the landing gear using its "less than truckload" ("LTL") service: Plaintiff collects various freights, transports them to warehouses or cross dock facilities, unloads and comingles them with other freights, and then reloads and organizes them based on destination and/or direction.[3] The process repeats itself until a particular freight is placed on a truck for delivery to, and arrives at, its final destination.

The landing gear remained in Plaintiff's custody from the time it was picked up in Arizona to the time it was delivered to Medley, Florida, on June 15, 2017. Six days later, Megatrans advised Plaintiff that the landing gear was damaged and requested a joint third-party inspection. Soon thereafter, a third party inspected the landing gear, and a claim was subsequently filed with Plaintiff.

### D. This Litigation

On October 16, 2017, Plaintiff filed this action against Global, Megatrans, Texon, and Marana Aerospace Solutions, Inc.,[4] seeking a declaration by the Court limiting its liability to

---

[3] Global denies Plaintiff's description of its LTL services but fails to provide any counter evidence. Def.'s SMF at 7. The Court, thus, deems the facts admitted. *See* Fed. R. Civ. P. 56(c)(1) (stating that parties opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute"); *Williams v. Slack*, 438 F. App'x 848, 849 (11th Cir. 2011) ("Federal Rule of Civil Procedure 56 requires a party asserting that a fact is genuinely disputed *to support his assertion by citing to specific materials in the record*, and a failure to do so allows the district court to consider the facts as undisputed for purposes of the motion for summary judgment.") (emphasis added) (citation omitted).

[4] On December 18, 2018, the Court entered default judgment in favor of Plaintiff against Texon and Marana Aerospace Solutions, Inc. [ECF No. 80]. The Court also previously held that RRDL was not a necessary party in this action under Federal Rule of Civil Procedure 19(a). [ECF No. 38].

$3,140.00 for any loss or damage to the landing gear (Count I), or, in the alternative, a declaration limiting its liability to $314.00 (Count II). [ECF No. 1, *as amended by* ECF No. 40]. On October 5, 2018, Global filed its first answer, which included counterclaims against Plaintiff for (1) negligence, (2) violations of the Interstate Commerce Act (the "ICA"), 49 U.S.C. §14704(a)(2), and (3) damages under the Carmack Amendment, 49 U.S.C. § 14706. [ECF No. 44].

On October 25, 2018, Plaintiff's counsel emailed Global's counsel stating that the Carmack Amendment preempts all state-law claims. Def.'s SMF at 10. As a result, Global filed an amended answer that now asserts only one counterclaim against Plaintiff: damages under the Carmack Amendment. [ECF No. 60]. Regarding Plaintiff's claims, Global asserts several affirmative defenses, including that Plaintiff's intentional conduct or negligence in repackaging the landing gear renders the Contract's liability limitation inapplicable. *Id*.

On October 23, 2019, Plaintiff filed the instant Motion for partial summary judgment as to Count 1 of the Complaint, requesting that the Court limit its liability for damage to the landing gear to $3,140.00 based on the Contract's liability limitation.[5] [ECF No. 89]. In opposition, Global argues[6] that (1) the liability limitation is inapplicable because the Carmack Amendment, not the Contract, should govern the extent of Plaintiff's liability, and (2) Plaintiff's negligence or intentional conduct during transit renders the liability limitation inapplicable. [ECF No. 94]. As outlined below, the Court disagrees and grants Plaintiff partial summary judgment as to Count 1 of the Complaint.

---

[5] Contrary to Global's assertion, Plaintiff properly seeks summary judgment as to one count of the Complaint. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment identifying each claim or defense—or part of each claim or defense—on which judgment is sought.").

[6] The only other remaining Defendant, Megatrans, did not file a response.

## II.     LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

An issue is "genuine" when the record evidence could lead a reasonable trier of fact to find for the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016), *vacated on other grounds*, No. 14-12696-CC, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (citation omitted). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citation omitted). "Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citations omitted). At summary judgment, the only question

is whether there is enough evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1303 (11th Cir. 2018) (citation omitted).

## III. DISCUSSION

### A. RRDL Bound Global to the Contract

"When an intermediary contracts with a carrier to transport goods," as is the case here, "the cargo owner's [i.e., the shipper's] recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 33 (2004). Though *Kirby* concerned maritime law, the Eleventh Circuit has held that "'the principles of fairness and efficiency animating the *Kirby* rule' operate equally in contracts for carriage on land." *Essex*, 885 F.3d at 1305 (citing *Werner Enters., Inc. v. Westwind Mar. Int'l, Inc.*, 554 F.3d 1319, 1324–25 (11th Cir. 2009)). "Thus, the default rule in the absence of a contrary agreement between the parties is that an intermediary . . . is deemed to have the limited authority as the shipper's agent to negotiate a liability limitation with a downstream carrier in exchange for a lower shipping rate." *Id.* This is true even if the shipper is "left in the dark." *Id.* The rule "gives the carrier the confidence to know that its liability will be capped by its agreement with the intermediary as opposed to being expanded unexpectedly by a later-surfacing agreement between the shipper and the intermediary." *Id.*

In *Essex*, the Eleventh Circuit applied the *Kirby*/*Werner* rule where a shipper alleged that a liability limitation was inapplicable because it was misled to believe that the transported goods would remain in one carrier's custody during transit. *Id*. The court found that "the efficiency rationale giving rise" to the rule "counsel[ed] against rendering a downstream carrier's liability limitation inoperative solely on the basis of an upstream carrier's unilateral misrepresentations to the shipper." *Id.* The "course more equitable" was to "make the misrepresenting carrier, not the

6

unknowing downstream carrier, bear the burden of expanded liability to the shipper." *Id.* at 1306. The carrier could thus rely on the limitation, and the shipper and intermediary were left to sort out "disputes about damages exceeding such a limitation solely between themselves." *Id.* at 1305.

The same principles apply here. Global chose to ship the landing gear in a manner which permitted use of an extended chain of parties and agreements. Plaintiff was "allowed to presume" that RRDL, as Global's agent, had the authority to negotiate the terms under which Plaintiff would transport the landing gear, even if Global had "no knowledge of such a negotiation." *Id.* This is because the alternative (requiring Plaintiff to investigate each upstream contract) would be unreasonable. Notably, Global does not claim that RRDL was without authority to engage Plaintiff to transport the landing gear pursuant to the Contract. Rather, Global argues that the extent of Plaintiff's liability should be governed by the Carmack Amendment, not the Contract's liability limitation. The Court disagrees.

### B. The Carmack Amendment Does Not Apply

Generally, the Carmack Amendment exclusively governs a carrier's liability for loss or damage to interstate shipments of cargo. Congress enacted the Carmack Amendment "to achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285 (11th Cir. 2014) (citation omitted). "Pursuant to that purpose, the Carmack Amendment preempts state-law claims against interstate motor carriers who 'provide motor vehicle transportation or service subject to jurisdiction under [the ICA]' and replaces those state-law claims with its strict-liability provision." *Essex*, 885 F.3d at 1300 (citing 49 U.S.C. § 14706(a)(1)).

Under § 14706(a)(1), a motor carrier providing interstate transportation of goods for hire is strictly "liable to the person entitled to recover under the receipt or bill of lading" for the "actual loss or injury to the property[.]" But carriers and shippers can contract around this default strict

7

liability by entering into contracts that expressly waive the Carmack Amendment's applicability. *See* 49 U.S.C. § 14101(b)(1). In those instances, the agreements between the parties—rather than the Carmack Amendment—will define their rights and remedies.

Here, the Contract contains an express waiver of the Carmack Amendment:

> WHEREAS the parties hereto intend to enter into a contract as authorized under 49 U.S.C. § 14101(b) to provide specified services under specified rates and conditions, provided, however, and except as otherwise prohibited by law or otherwise reserved in [the Contract], the parties hereby expressly waive any and all rights and remedies permitted there under [sic].

[ECF No. 90 at 2]. Global does not dispute that this is an effective Carmack Amendment waiver. Instead, Global argues that Plaintiff is estopped from asserting the waiver because Plaintiff's counsel improperly lulled Global into withdrawing its state-law claim against Plaintiff. Global is wrong.

The Court deduces the following from Global's sparse argument: When discussing the Carmack Amendment's preemptive effects, Plaintiff's counsel improperly failed to notify Global's counsel that the Contract contained a Carmack Amendment waiver.[7] As previously discussed, RRDL stood in Global's shoes when it contracted with Plaintiff to arrange for the transportation of the landing gear. Global cannot now claim ignorance of the waiver provision within the Contract to which RRDL, its agent, agreed. *See Swift Textiles, Inc., v. Watkins Motor Lines, Inc.*, 799 F.2d

---

[7] Plaintiff claims that Global's argument is flawed because waiving the Carmack Amendment's applicability does not affect its preemptive effects. In other words, the Carmack Amendment preempted Global's state-law claim against Plaintiff, regardless of the parties' waiver. Because Global voluntarily withdrew its state-law claim against Plaintiff, the Court need not decide today whether it may have been permitted to proceed. But the Court notes that there is conflict among district courts considering the issue, and the Eleventh Circuit has yet to weigh in. *Compare UPS Supply Chain Sols., Inc. v. Megatrux Transportation, Inc.*, No. 1:10-CV-0375-CAP, 2013 WL 12092286, at *2 (N.D. Ga. Jan. 29, 2013) ("[State-law claims arising from failures in the transportation and delivery of goods] will be preempted unless [the Carmack Amendment] is waived[.]") (citation omitted), *aff'd in part, rev'd in part and remanded sub nom. UPS Supply Chain Sols., Inc.*, 750 F.3d 1282 (not addressing the issue on appeal), *and Cent. Transp. Int'l, Inc. v. Alcoa, Inc.*, No. 06-CV-11913-DT, 2006 WL 2844097, at *3 (E.D. Mich. Sept. 29, 2006) ("Because Alcoa has failed to show waiver of the Carmack Amendment, its breach of contract claim is preempted and must be dismissed."), *with Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.*, No. CIV.A.2:06CV1517-LDD, 2006 WL 2871745, at *4 (E.D. Pa. July 14, 2006) ("[T]he language of § 14101(b)(1), which applies to the waiver of 'rights and remedies,' simply does not incorporate principles of preemption, which are neither a 'right' nor a 'remedy,' but a jurisdictional component of the legislative regulation of the state/federal dynamic.").

697, 704 (11th Cir. 1986) (holding that the shipper could not complain that it did not have actual notice of a provision incorporated by reference in a shipping document prepared by the shipper's own agent).

Moreover, the doctrine of equitable estoppel does not apply under these circumstances. The sole case on which Global relies makes clear that equitable estoppel "bars the wrongdoer from . . . profiting from his or her own *misconduct*." *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1331 (S.D. Fla. 2010), *aff'd*, 477 F. App'x 702 (11th Cir. 2012) (emphasis added) (citation omitted). Informing Global of relevant caselaw is not misconduct and neither is failing to disclose a Contract to which Global's agent, RRDL, was a party. Accordingly, Plaintiff is not estopped from invoking the Contract's Carmack Amendment waiver.[8]

### C. Global's Affirmative Defenses Do Not Preclude Entry of Partial Summary Judgment in Favor of Plaintiff

Global argues that even if the Contract (and not the Carmack Amendment) controls, triable issues remain as to two of its affirmative defenses: that Plaintiff's negligence or intentional conduct in repackaging the landing gear caused it to be damaged. Global claims that either finding would render the liability limitation inapplicable. But this argument lacks evidentiary and legal support.

The party asserting an affirmative defense bears the burden of proving its affirmative defense at trial. *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550–51 (11th Cir. 1990) (citations omitted). So, "[o]n a plaintiff's motion for summary judgment," a defendant asserting an affirmative defense "bears the initial burden of showing that the affirmative defense is applicable." *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (citation omitted). To do so, "[t]he defending party must rely on or submit record evidence in support of the purported

---

[8] Because the parties expressly waived the Carmack Amendment's applicability, the Court need not determine whether the Contract's liability limitation satisfies the Carmack Amendment's requirements. *See UPS Supply Chain Sols., Inc.*, 750 F.3d at 1286 (creating a four-part test for a carrier to effectively limit its liability under the Carmack Amendment).

affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:14-CV-3129-T-30TBM, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015) (citation omitted). If the defendant fails to make such a showing, a court may grant the plaintiff's summary judgment motion. *See, e.g.*, *Riberglass, Inc. v. Techni–Glass Indus., Inc.*, 804 F.2d 1577, 1580 (11th Cir. 1986) (affirming summary judgment in favor of plaintiff where defendant failed to produce evidence of an affirmative defense), *reh'g granted and rev'd on other grounds*, 811 F.2d 565 (11th Cir. 1987).

Global has not met its burden to establish that its affirmative defenses apply. Global presents the following evidence in support: (1) Plaintiff repackaged the landing gear at some point during transit, and (2) the only reason such repackaging would have occurred is if the landing gear's original packaging was damaged. That is not enough. Global presents no evidence demonstrating that Plaintiff caused the *landing gear* to be damaged. In fact, Global presents no evidence of when such damage even occurred. Notably, Global did not request time for discovery on the issue. "[C]onclusory allegations without specific supporting facts have no probative value" at this stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (citations omitted).

Even if a reasonable jury could find that Plaintiff's repackaging caused damage to the landing gear, Global fails to explain why such a finding means that Plaintiff is not entitled to the liability limitation. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (citations omitted). Thus, partial summary judgment in favor of Plaintiff is warranted.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment as to Count I of the Complaint, limiting its potential liability to $3,140.00 as to Global and Megatrans for any damage to the landing gear, [ECF No. 89], is **GRANTED**; and

2. On or before May 29, 2020, the parties shall file a joint status report indicating whether any issues remain that preclude entry of final judgment in favor of Plaintiff.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of May, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE